UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DENIZ BOLBOL and JOSEPH CUVIELLO, INDIVIDUALLY,<br><br>                    Plaintiffs,<br><br>          v.<br><br>FELD ENTERTAINMENT, INC. (dba RINGLING BROS. and BARNUM & BAILEY CIRCUS); JAMES DENNIS; MATTHEW GILLET; and DOES 1-10,<br><br>                    Defendants. | Case No.: 5:11-cv-05539-PSG<br><br>**ORDER GRANTING-IN-PART FELD ENTERTAINMENT'S MOTION TO DISMISS AND DENYING FELD ENTERTAINMENT'S ALTERNATIVE MOTION TO STRIKE**<br><br>**(Re: Docket No. 18)** |

Plaintiffs Deniz Bolbol ("Bolbol") and Joseph Cuviello ("Cuviello")[1] (collectively "Plaintiffs") bring this suit against Defendants Feld Entertainment ("Feld"), dba Ringling Bros. and Barnum & Bailey Circus ("Ringling Bros."), James Dennis ("Dennis"), Matthew Gillet ("Gillet"), and Does 1-10 (collectively "Defendants"). Plaintiffs assert constitutional, statutory, and common law claims related to Defendants' conduct in responding to Plaintiffs' presence at various Ringling Bros. circus venues in California. Feld moves to dismiss the present complaint for failure to state a claim upon which relief may be granted. In the alternative, Feld moves to strike immaterial portions of the complaint. For the reasons explained below, Feld's motion to dismiss is GRANTED-IN-PART with leave to amend.

---

[1] The court notes that Cuviello is proceeding *pro se*.

Case No.: 5:11-cv-05539-PSG
**ORDER GRANTING-IN-PART FELD ENTERTAINMENT'S MOTION TO DISMISS AND DENYING FELD ENTERTAINMENT'S ALTERNATIVE MOTION TO STRIKE**

# I.    BACKGROUND

This case represents the latest in a long-running series of on-the-ground altercations and in-court battles involving Plaintiffs' protest actions and efforts to document Defendants' handling and treatment of their circus animals. Especially pertinent to questions raised in the motion pending before the court is a 2004 lawsuit, *Bolbol et al. v. Ringling Bros. and Barnum & Bailey Circus, et al.*, 04-cv-00082-JW ("2004 litigation"), which involved several of the same parties and related issues, and in which Plaintiffs obtained injunctive relief in connection with their speech activities.[2] Plaintiffs filed the instant action in the Superior Court of Santa Clara County in August 2011, and Defendants removed the complaint to this court on November 16, 2011.[3] On December 7, 2011, Plaintiffs filed a first amended complaint ("FAC") asserting causes of action for: (1) violations of Plaintiffs' free speech rights under Article 1, § 2(a) of the California Constitution; (2) violations of California Civil Code § 51.7 for threats and intimidation on the basis of political affiliation; (3) intentional property damage; (4) intentional infliction of emotional distress; (5) violations of California Civil Code § 52.1 based on the California Constitution's Liberty of Speech and Press Clause, Civil Code §§ 1708 and 3479; and (6) injunctive relief for harassment pursuant to California Code of Civil Procedure § 527.6. Plaintiffs seek compensatory, punitive, and treble damages, civil penalties, injunctive relief, and attorney's fees and costs.[4]

The court draws the following facts from Plaintiffs' FAC.[5] Plaintiffs are members of a local group "dedicated to the humane treatment of animals and educating the public about the abuse and mistreatment of animals in circuses."[6] Bolbol and Cuviello have been dedicated to the animal

---

[2] The court addresses at length the relevance of the 2004 litigation for this action. *See infra* III.C.

[3] The court finds that jurisdiction and venue are proper pursuant to 28 U.S.C. §§ 1332 and 1441, respectively.

[4] *See generally* Docket No. 13 (FAC).

[5] The court also grants both parties' requests for judicial notice because the authenticity of the attached documents is not in dispute and may be verified by resort to the public record. *See* Docket No. 19 (Def.'s Req. for Judicial Notice in Supp. of Mot. to Dismiss); Docket No. 27 (Pls.' Req. for Judicial Notice in Supp. of Opp'n to Defs.' Mot.); Docket No. 29 (Defs.' Supplemental Req. for Judicial Notice).

[6] *Id.* ¶ 12.

Case No.: 5:11-cv-05539-PSG
**ORDER GRANTING-IN-PART FELD ENTERTAINMENT'S MOTION TO DISMISS AND DENYING FELD ENTERTAINMENT'S ALTERNATIVE MOTION TO STRIKE**

United States District Court
For the Northern District of California

rights cause for eleven and twenty-four years, respectively, engaging in a variety of activities including leafleting Ringling Bros. circus patrons and videotaping circus treatment of animals.[7] Plaintiffs use the video footage to speak out against the abuse of circus animals, educate the public, and engage the media.[8] Over the years, Plaintiffs have visited many Ringling Bros. venues and engaged in these activities.[9]

Defendants' consistent response to Plaintiffs' free speech activities has been harassment and interference by physical assault, by blocking Plaintiffs' video cameras and by threatening arrest.[10] Defendants have a "policy and practice" of "intentionally interfer[ing] with Plaintiffs' free speech rights for the purpose of chilling plaintiffs in the exercise of their constitutionally protected rights."[11] Specific instances of conduct alleged include:

- The use of fire hoses to harass and interfere with Plaintiffs' and other activists' videotaping efforts by attempting to spray them while they are videotaping the circus animals, including a 2005 incident in which a Ringling Bros. employee sprayed Cuviello with a water hose and an August 2010 incident in San Jose in which Bolbol was sprayed with a hose and forced to halt videotaping when her video camera became "drenched" and stopped working.[12]

- The use of laser pointers to shine into Plaintiffs' and other activists' eyes and cameras to interfere with their videotaping efforts, including a 2007 incident in which Ringling Bros. employees shined laser pointers into Cuviello's eyes and cameras, an August 2010 incident in Oakland in which employees did the same to Plaintiffs' fellow activist, Shannon Campbell, and again in August 2010 in San Jose when Dennis and Gillet shined laser pointers into Plaintiffs' cameras;[13]

- The use of ropes—which otherwise are used to assist with the loading and unloading of animals from the circus train and their transfer on foot from the train to the circus venue—to harass and interfere with Plaintiffs' and other activists' efforts by wrapping and entangling them in the ropes, pushing the ropes against Plaintiffs while they are walking or standing on the public sidewalks, and de-stabilizing Plaintiffs' cameras by hooking the

---

[7] *Id.* ¶¶ 12, 18-21.

[8] *Id.* ¶ 13-17.

[9] *See id.* ¶¶ 20-21, 25-26.

[10] *See id.* ¶ 27.

[11] *Id.* ¶ 30.

[12] *Id.* ¶¶ 32, 33, 46.

[13] *See id.* ¶¶ 35, 40, 42, 43.

3

rope under the equipment, including a 2007 incident using a rope to interfere with Plaintiffs' presence during the walk from the arena back to the train;[14] and

- The use of sticks, mounted with enlarged photos of Plaintiffs and other activists, in August 2010 in San Jose to harass and interfere with Plaintiffs' and other activists' videotaping efforts by blocking and swatting at the cameras in an attempt to hit the equipment.[15]

Defendants' employment of fire hoses, laser pointers, ropes, and stick-mounted photos harasses Plaintiffs, obstructs their use of public space on the sidewalks, interferes with their videotaping circus animals' living conditions, the loading and unloading of the animals, and their transport between trains and venues, and forces them to redirect their attention to avoid damage to their persons or property.[16] These tactics cause Plaintiffs to suffer embarrassment, humiliation, mental anguish and emotional distress.[17]

Plaintiffs have reported various instances to the police, including the August 2010 occurrence at the San Jose Arena involving the use of a fire hose.[18] According to Plaintiffs, Feld admitted to the police that water was sprayed over the wall (where Plaintiffs were located), but claimed that the water was sprayed by an elephant.[19] Plaintiffs also have filed lawsuits for the violation of their free speech rights by the arena management companies, individual police officers, and several municipalities, including the Cities of San Jose, Stockton, and Oakland.[20] Plaintiffs have obtained permanent injunctions in the San Jose and Stockton cases.[21] The permanent injunction in the San Jose 2004 litigation, as modified in December 2009, states in relevant part:

> 2. The injunction is intended to protect the expressive activities of the Plaintiffs Deniz Bolbol and Joseph Cuviello (collectively referred to as the "Plaintiffs").

---

[14] *See id.* ¶¶ 38, 40.

[15] *See id.* ¶ 44.

[16] *Id.* ¶¶ 34, 37, 39, 45, 46, 47.

[17] *See id.* ¶¶ 49-51.

[18] *Id.* ¶ 48.

[19] *Id.*

[20] *Id.* ¶ 27.

[21] *Id.* ¶ 28.

Case No.: 5:11-cv-05539-PSG
**ORDER GRANTING-IN-PART FELD ENTERTAINMENT'S MOTION TO DISMISS AND DENYING FELD ENTERTAINMENT'S ALTERNATIVE MOTION TO STRIKE**

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

3. For purposes of this injunction, the Court declares the following to be within the definition of a "public forum" under California's Liberty of Speech Clause. ***

A. All public streets and sidewalks in and around the HP Pavilion, except as legitimately and temporarily blocked off from the general public during transportation or movement of animals pursuant to concerns for the safety of the animals and their caretakers.

B. The North parking lot.

C. The North entrance to HP Pavilion, including the steps and entry level.

4. For purposes of this injunction, the Court declares the following to be within the definition of a "non-public forum":

A. The interior of the HP Pavilion during ticketed events.

B. The area of the North parking lot reserved for the ticketed Animal Open House.

C. The area of the North parking lot reserved for residence of Feld Entertainment personnel.

D. Those portions of the public streets and sidewalks in and around the HP Pavilion, which are legitimately and temporarily blocked off during transportation or movement of animals and equipment pursuant to concerns for the safety of the animals and their caretakers.

5. HP Pavilion Management is enjoined from interfering with peaceful soliciting, leafleting, carrying billboards or sandwich boards, or other peaceful expressive activities by Plaintiffs in any public forum as defined in this injunction, including the North parking lot.

6. HP Pavilion Management is enjoined from interfering with peaceful photography or peaceful video taping by the Plaintiffs from any public forum as defined by this injunction. Nothing in this injunction is intended to permit a Plaintiff to peer over walls or erected barriers to videotape activity in a non-public forum.[22]

## II.    LEGAL STANDARDS

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[23] If a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief

---

[22] *See* Docket No. 19 (Def.'s Req. for Judicial Notice in Supp. of Mot. to Dismiss) at Ex. E (Order Granting In Part and Denying In Part Joint Mot. to Modify Permanent Inj.); Docket No. 27 (Pls.' Req. for Judicial Notice in Supp. of Opp'n to Defs.' Mot.) at Ex. F (Modified Permanent Inj.: 12/14/2009, Case No. 04-cv-00082-JW).

[23] Fed. R. Civ. P. 8(a)(2).

Case No.: 5:11-cv-05539-PSG
**ORDER GRANTING-IN-PART FELD ENTERTAINMENT'S MOTION TO DISMISS AND DENYING FELD ENTERTAINMENT'S ALTERNATIVE MOTION TO STRIKE**

United States District Court
For the Northern District of California

may be granted.[24] A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[25] Accordingly, under Fed. R. Civ. P. 12(b)(6), which tests the legal sufficiency of the claims alleged in the complaint, "[d]ismissal can based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[26]

On a motion to dismiss, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.[27] The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice.[28] However, the Court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences.[29] "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment."[30] "Motions to strike are not favored, and should be denied unless the allegations have no possible relation to the controversy and may cause prejudice to the parties."[31]

### III.    DISCUSSION

Feld challenges the viability of Plaintiffs' action on the following grounds: (1) standing; collateral estoppel based on the 2004 litigation; (2) statute of limitations; and (3) the sufficiency of the pleadings under Fed. R. Civ. P. 12(b)(6). Feld alternatively requests that the court strike

---

[24] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[25] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[26] *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).

[27] *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

[28] *See id.* at 1061.

[29] *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); s*ee also Twombly*, 550 U.S. at 561 ("a wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

[30] *Eminence Capital, LLC v. Asopeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

[31] *Willson v. Cagle*, 711 F. Supp. 1521, 1534 (N.D. Cal. 1988).

6

Case No.: 5:11-cv-05539-PSG
**ORDER GRANTING-IN-PART FELD ENTERTAINMENT'S MOTION TO DISMISS AND DENYING FELD ENTERTAINMENT'S ALTERNATIVE MOTION TO STRIKE**

United States District Court
For the Northern District of California

1   portions of the complaint that plead facts outside of the statute of limitations or allege harm caused

2   to non-parties. Feld also contends that Plaintiffs engage in serial litigation by which they harass

3   Defendants, abuse the court system, and seek to profit from civil penalty and attorney fee awards.

4   According to Feld, Plaintiffs and/or their co-activists have been involved as plaintiffs in nine

5   lawsuits over the past eight years related to their animal rights activities. In addition to the 2004

6   litigation, Plaintiffs have filed two suits in this district involving Ringling Bros. venues in Oakland,

7   California, the second of which was filed in 2009 and involves many of the same causes of

8   action.[32]

9        Plaintiffs respond that they have met their burden under the federal rules, that allegations

10  of harassment that fall outside of the statute of limitations or involve harm to non-parties are

11  relevant to establishing a pattern and practice of behavior, and that the 2004 litigation does not

12  preclude any of the claims brought in this suit. The court addresses each set of arguments in turn.

**A.       Standing**

14       Standing under Article III of the Constitution requires the plaintiff to establish injury-in-

15  fact, a causal connection between the injury and the conduct complained of, and a likelihood that

16  the injury "will be redressed by a favorable decision."[33] A number of Plaintiffs' allegations refer to

17  Defendants' actions in relation to "Plaintiffs and other activists" or "Plaintiffs and those in

18  concert."[34] Plaintiffs' complaint also describes an incident in which Defendants allegedly shined a

19  laser pointer into the eyes of activist Shannon Campbell, a non-party.

20       Feld is correct that Plaintiffs do not have standing to bring claims on behalf of their co-

21  activists, nor based on what other activists have experienced. The injury requirement for standing

22  addresses injury to the Plaintiff, not others, and Plaintiffs appear to concede as much with their

23  representation at the hearing that they bring claims only on their own behalf. To the extent

24  Plaintiffs' complaint brings claims on behalf of parties other than Plaintiffs, the motion to dismiss

---

[32] *See* Docket No. 17 (Defs.' Mot. to Dismiss) at 7-8 (referencing Case No. 3:06-cv-05517-EMC and Case No. 3:09-cv-0295-EMC).

[33] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted).

[34] *See, e.g.*, Docket No. 13 (FAC) ¶¶ 31, 32, 35, 40, 43.

7

Case No.: 5:11-cv-05539-PSG
**ORDER GRANTING-IN-PART FELD ENTERTAINMENT'S MOTION TO DISMISS AND DENYING FELD ENTERTAINMENT'S ALTERNATIVE MOTION TO STRIKE**

1     is granted. At the same time, because Feld does not establish the prejudice from the allegations

2     regarding non-parties, the motion to strike these allegations is denied.

3     **B.    Statute of Limitations**

4        Under California law, Plaintiffs' claims for personal injury, including property damage, are

5     subject to a two-year statute of limitations period.[35] Plaintiffs' statutory claims are subject to a

6     three-year statute of limitations period.[36] The law of this circuit dictates that Plaintiffs' claims

7     began to accrue when Plaintiffs knew or should have known of the injury that forms the basis of

8     the action.[37]

9        Feld contends that most of Plaintiffs' allegations relate to events or incidents that took place

10    outside of the applicable statute of limitations periods, including the alleged incidents in 2005,

11    2006, and 2007 involving Defendants' use of fire hoses, laser pointers, and ropes. Feld argues that

12    these incidents took place over four years ago and may not form the basis of Plaintiffs' civil rights,

13    property damage, and statutory claims. Feld also argues that Plaintiffs' generalized allegations that

14    the same conduct has continued "to the present" are insufficient to state a claim for relief.

15       Plaintiffs respond that the allegations dating back to 2005 and earlier establish that Ringling

16    Bros. "has a long-standing policy and practice" to violate Plaintiff's free speech right to videotape

17    circus activities. Plaintiffs point out that they have asserted continuing misconduct to the present,[38]

18    and that Defendants' use of fire hoses, laser pointers, ropes and sticks from August 19, 2009 to the

19    present falls within the two-year statute of limitations, while those instances from August 19, 2008

20    falls within the three-year statute of limitations. Plaintiffs also argue that their claim for intentional

21    <hr>

    [35] *See* Cal. Code Civ. P. § 335.1.

22    [36] *See* Cal. Code Civ. P. § 338(a).

23    [37] *See TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999); *Elliot v. Union City*, 25 F.3d 800,

24    891-902 (9th Cir. 1994).

25    [38] *See, e.g.*, Docket No. 13 (FAC) ¶ 35 ("Beginning in 2005 ***and to the present***, Circus employees
have shined laser pointers into the eyes and camera lenses of Plaintiffs and those in concert, to

26    interfere with their attempts to videotape the Circus' treatment of the animals."); *id.* ¶ 38
"Beginning in 2006, ***and to the present***, in every city at the unloading and loading of animals from

27    the Circus train . . . Circus employees [holding the rope] have used this rope to harass and interfere
with Plaintiffs' and other activists' attempts to videotape the treatment of the animals during these

28    walks.") (emphasis added).

Case No.: 5:11-cv-05539-PSG
**ORDER GRANTING-IN-PART FELD ENTERTAINMENT'S MOTION TO DISMISS AND
DENYING FELD ENTERTAINMENT'S ALTERNATIVE MOTION TO STRIKE**

United States District Court
For the Northern District of California

infliction of emotional distress can be predicated on proof of repeated, intentional harassment over time, making the references to earlier years relevant.

For each category of misconduct alleged, Plaintiffs identify only a few actual instances directed at Bolbol and/or Cuviello that took place within the statute of limitation periods. These are the August 2010 incidents in San Jose in which Defendants allegedly used: (1) a fire hose to spray over the wall where Bolbol and Cuviello were standing, forcing them to stop videotaping and damaging Bolbol's video camera;[39] (2) laser pointers to shine into Plaintiffs' cameras;[40] and (3) sticks mounted with enlarged photos to bat, hit, and block Plaintiffs' cameras.[41] There is no allegation that a historical "pattern and practice" of conduct supports any of Plaintiffs' particular causes of action, with the possible exception of demonstrating repeated harassment for the intentional infliction of emotional distress and injunctive relief from harassment claims. However, the court finds these causes of action to be deficient for other reasons, as explained below. Nor does including the phrase "and to the present" with each allegation of misconduct suffice to lay the basis for a plausible claim for relief, because there are no facts upon which the court may draw a reasonable inference that such misconduct "to the present" has been directed at Plaintiffs and can form the basis for Defendants' liability.[42]

Plaintiffs may be able to amend their pleadings to include factual content that allows the court to draw the reasonable inference that, for example, Defendants have used ropes against Plaintiffs within the statute of limitations period, or have applied the tactics described in other instances, in addition to the August 2010 allegations. For the purpose of assessing Plaintiffs' present claims under Rule 12, however, the court will not consider those allegations relating to

---

[39] *Id.* ¶¶ 46-48.

[40] *Id.* ¶ 43.

[41] *Id.* ¶ 44.

[42] *See Iqbal*, 129 S. Ct. at 1940 (holding that a claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

Case No.: 5:11-cv-05539-PSG
**ORDER GRANTING-IN-PART FELD ENTERTAINMENT'S MOTION TO DISMISS AND DENYING FELD ENTERTAINMENT'S ALTERNATIVE MOTION TO STRIKE**

United States District Court
For the Northern District of California

1    incidents before August 2008 or those which in a vague and conclusory fashion seek to extend the

2    facts alleged "to the present."

3    **C.    Collateral Estoppel**

4           The doctrine of collateral estoppel or issue preclusion "bars 'successive litigation of an

5    issue of fact or law actually litigated and resolved in a valid court determination essential to the

6    prior judgment,' even if the issue recurs in the context of a different claim."[43] By guarding against

7    re-litigation of issues that have had a full and fair opportunity to be heard and decided on the

8    merits, issue preclusion and its sister doctrine, claim preclusion, "protect against 'the expense and

9    vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial

10   action by minimizing the possibility of inconsistent decisions.'"[44] The party asserting collateral

11   estoppel bears the burden of establishing: "(1) the issue necessarily decided at the previous

12   proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended

13   with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted

14   was a party or in privity with a party at the first proceeding."[45]

15          Feld contends that Plaintiffs are barred from re-litigating the issue of their right to videotape

16   circus activities taking place in a non-public forum, such as behind a high wall or in a restricted

17   area. Feld argues that in light of the statute of limitations, Plaintiffs' only viable claims are those

18   based on the August 2010 incidents, in which Plaintiffs were engaged in an attempt to videotape

19   into the loading dock of the San Jose Arena. Based on numerous court rulings in the 2004

20   litigation, Feld argues that the loading dock is a non-public forum and that Plaintiffs should be

21   estopped from asserting any purported violation of their rights in conjunction with an attempt to

22   videotape into the loading dock area.

23   _____

[43] *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine*, 532 U.S 742,
24   748-49 (2001)).

25   [44] *Id.* (quoting *Montana v. United States*, 440 U.S. 147, 153-54 (1979)); *see also Acevedo-Garcia v.
     Monroig*, 351 F.3d 547, 574 (1st Cir. 2003) ("Permitting repeated litigation of the same issue as
26   long as the supply of unrelated defendants holds out reflects either the aura of the gaming table or a
     lack of discipline and of disinterestedness on the part of the lower courts, hardly a worthy or wise
27   basis for fashioning rules of procedure.") (internal quotation marks omitted).

28   [45] *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 886 (9th Cir. 2000).

Case No.: 5:11-cv-05539-PSG
**ORDER GRANTING-IN-PART FELD ENTERTAINMENT'S MOTION TO DISMISS AND
DENYING FELD ENTERTAINMENT'S ALTERNATIVE MOTION TO STRIKE**

United States District Court
For the Northern District of California

Plaintiffs respond that issue preclusion does not apply because the issues of "Ringling's alleged privacy rights" and "Plaintiffs' right to videotape over walls or barricades or to videotape into non-public fora areas were never issues in the [2004 litigation] and, thus, never litigated."[46] Additionally, Plaintiffs argue that the issues in the 2004 litigation related only to Plaintiffs' claims against the defendants HP Pavilion Management and the City of San Jose for preventing Plaintiffs from accessing the North parking lot of the Arena in violation of Plaintiffs' constitutionally-protected free speech rights. The injunction that issued was directed at the defendants in that case. Plaintiff argues that under Fed. R. Civ. P. 65(d), had the court sought to legally enjoin Plaintiffs from certain videotaping activities, the injunction would have stated those terms specifically and in reasonable detail. Instead, Plaintiffs argue that the statement that "[n]othing in this injunction is intended to permit a Plaintiff to peer over walls or erected barriers to videotape activity in a non-public forum" expresses the court's opinion on Plaintiffs' right to peer over walls or videotape non-public forums, but does not actually enjoin anything.[47]

Plaintiffs' complaint in the 2004 litigation sought declaratory and injunctive relief relating to "the present policy of prohibiting citizens from exercising free speech rights."[48] The briefing on Plaintiffs' motion for preliminary injunction in the 2004 litigation included a declaration from a Ringling Bros. employee stating that Plaintiffs filmed over the wall of the loading dock and were told not to do so.[49] The court's original ruling on the preliminary injunction motion included the statement that "Plaintiffs may not videotape *any* Circus-related activities or persons."[50] The court then modified the preliminary injunction to delineate limited areas in which expressive activities

---

[46] Docket No. 26 (Pls.'Opp'n to Defs.' Mot. to Dismiss) at 6.

[47] *See id.* at 7-9.

[48] Docket No. 6 (Defs.' Req. for Judicial Notice) at Ex. A (Compl. for Damages and Declaratory Relief: 1/8/2004), 9:24.

[49] *See* Docket No. 29 (Defs.' Supp. Req. for Judicial Notice) at Ex. A (Fahrenbruck Decl.: Aug. 18, 2004) ¶ 11 ("Bolbol and Cuviello insisted on placing cameras on tri-pods and putting them over the walls surrounding the loading dock in the back of the HP Pavilion, where the animals are walked into the show. Bike racks were placed around the walls and plaintiffs, Cuviello and Bolbol were told to stay outside the bike racks. Plaintiffs, however, continuously violated this request.").

[50] *Id.* at Ex. B (Preliminary Inj.: 8/24/2004), 2:4-5.

Case No.: 5:11-cv-05539-PSG
**ORDER GRANTING-IN-PART FELD ENTERTAINMENT'S MOTION TO DISMISS AND DENYING FELD ENTERTAINMENT'S ALTERNATIVE MOTION TO STRIKE**

were not permitted and to state that "[a]ctivists are free to videotape in the same manner as any

member of the public."[51] The following year, Feld filed a motion requesting sanctions against

Plaintiffs based on Plaintiffs' videotaping over the walls of the HP Pavilion, which Feld argued

was not "in the same manner as any member of the public."[52] Plaintiffs responded that standing on

a public sidewalk and placing their cameras on tripods did not violate the preliminary injunction, as

that was no different from a tall individual or child on a parent's shoulders who was positioned "to

look over the approximately seven-foot wall surrounding the back entrance area."[53] Plaintiffs

emphasized that Bolbol and Cuviello were "only interested in obtaining footage of the animals

from publicly-accessible areas."[54]

In its ruling, the court denied Feld's motion as untimely but acknowledged Feld's

allegations that "Plaintiffs placed their video cameras on tripods, extended their cameras over the

walls to the back stage and videotaped the entrance to the HP Pavilion."[55] The issue of Plaintiffs'

manner of videotaping also arose at trial[56] and in the parties' contested briefing on proposed

injunction language.[57] After the jury and bench trials, the court entered a permanent injunction

"intended to protect the expressive activities of the Plaintiffs Deniz Bolbol and Joseph Cuviello"

---

[51] *Id.* at Ex. C (Order Modifying Aug. 24, 2004 Preliminary Inj.: 8/23/2005), 4:19-25.

[52] *Id.* at Ex. D (Mem. P. & A. in Supp. of Feld's Mot. for OSC: 1/20/2006), 2:23-3:22, 4:20-5:8 ("Bolbol and Cuviello were asked by Ringling Bros. personnel to stop videotaping over the wall and into the HP Pavilion as no member of the public videotaped in this area. Bolbol and Cuviello refused to stop videotaping.").

[53] *Id.* at Ex. F (Pls.'Opp'n to Ringling Bros. Mot. for OSC: 2/6/2006), 3:18-4:3.

[54] *Id.* at 4:4-5.

[55] *Id.* at Ex. G (Order Den. Feld's Mot. for Contempt and Sanctions, 8/30/2006).

[56] *Id.* at Ex. L (Tr. of Proceedings before Hon. James Ware: 1/18/2006), 12:2-21 ("A: There's a wall which leads to the loading area. Q: And what activity was taking place there? A: The protestors would, would raise their cameras on long poles over the wall and let them know what was going on and on the area which is below street level.").

[57] Plaintiffs proposed language stated: "Plaintiffs may videotape from any area in which the public is allowed access, and in the same manner as any member of the public." *Id.* at Ex. H (Pls.' Proposed Permanent Inj.), 2:21-22. Feld argued that if a permanent injunction would issue, the court should retain the language of the modified preliminary injunction only. *Id.* at Ex. I (Feld Trial Br.: 4/4/2006), 2:10-17, 4:14-24.

Case No.: 5:11-cv-05539-PSG
**ORDER GRANTING-IN-PART FELD ENTERTAINMENT'S MOTION TO DISMISS AND DENYING FELD ENTERTAINMENT'S ALTERNATIVE MOTION TO STRIKE**

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

and enjoining the defendants from "interfering with photography or video taping by the Plaintiffs of any activity taking place in any public forum or limited public forum as defined in this injunction."[58] The court then included the language cited by Plaintiffs: "[n]othing in this injunction is intended to permit a Plaintiff to peer over walls or erected barriers to videotape activity taking place in any non-public forum."[59]

This language became the subject of post-judgment motions and briefing, in which Feld sought to amend the permanent injunction to include the loading dock area in the definition of a non-public forum and appended declarations describing Plaintiffs' videotaping into that area.[60] The court's ruling retained the language of the injunction, but noted at length:

> The loading dock is not open to the general public. It is surrounded by a concrete block wall, which is approximately ten feet high, making it impossible for members of the public to peer over it and see the activities being conducted there…. There was evidence that Plaintiffs used video equipment on telescopic poles to peer over the wall into the loading dock and to record activity in this non-public area.
> This matter is already addressed in the Permanent Injunction. The loading dock is not open to the public – not even on a limited basis. It is restricted to authorized personnel only. The Permanent Injunction makes clear that the streets and sidewalks are within the definition of a 'public forum.' *** ***Paragraph 7 of the Permanent Injunction clearly states that Plaintiffs are not permitted to peer over walls or barriers to videotape activity taking place in any non-public forum***. Therefore, the Court declines to modify the Permanent Injunction, finding the Permanent Injunction adequate to cover the area in question.[61]

After appeal to the Ninth Circuit and additional motions to modify the permanent injunction, the court again declined to alter the language at issue, stating "the walled-off areas and areas behind erected barriers at issue here are non-public fora and as the Court has previously held, Plaintiffs do

---

[58] Docket No. 6 (Defs.' Req. for Judicial Notice) at Ex. C (J. and Permanent Inj.: 8/30/2006).

[59] *Id.* at 3:15-16.

[60] Docket No. 29 (Defs.' Supp. Req. for Judicial Notice) at Ex. M (Defs.' Mem. P. & A. in Supp. of Mot. for OSC and to Amend Permanent Inj.: 9/13/2006), 1:26-27, 3:20-4:14 (explaining that although it "believes the back stage loading area . . . falls within this definition [of a non-public forum as defined by the injunction], the Court did not specifically address whether the back stage loading area of the HP Pavilion is a non-public forum"). *See also id.* at 5:1-3.

[61] Docket No. 6 (Defs.' Req. for Judicial Notice) at Ex. D (Order Re: (1) Mot. to Modify Permanent Inj.; (2) Feld's Mot. for OSC Re: Contempt: 5/17/2007), 5:9-6:2 (emphasis added).

Case No.: 5:11-cv-05539-PSG
**ORDER GRANTING-IN-PART FELD ENTERTAINMENT'S MOTION TO DISMISS AND DENYING FELD ENTERTAINMENT'S ALTERNATIVE MOTION TO STRIKE**

United States District Court
For the Northern District of California

not have a constitutionally-protected interest in peering, videotaping, or otherwise directing their expressive activities into them."[62]

This extensive record leaves little doubt that the issue of Plaintiffs' right to videotape from a public sidewalk into a non-public area, specifically by extending the reach of their cameras over a tall wall such as that of the loading dock, was addressed fully and fairly by the court in the 2004 litigation. That case ended with a final judgment on the merits and the issuance of a five-year permanent injunction. It was necessarily decided in the context of the parties' motions on preliminary and permanent injunctions that Plaintiffs' right to expressive activity in public fora did not include peering over or videotaping into private areas. Even if the Plaintiffs were not themselves enjoined from this activity in the earlier case, that issue is identical to that which would necessarily be relitigated in determining the merits of Plaintiffs' present claims that are based upon protected, expressive activity. Finally, Bolbol and Cuviello, against whom collateral estoppel is asserted here, were both parties at the first proceeding; Feld was a defendant in that proceeding and, even after its dismissal, remained in the case with the right to participate.[63] Based on Judge Ware's decision that Plaintiffs have no constitutionally-protected interest in peering and videotaping into non-public fora, Plaintiffs are precluded from basing their claims for relief solely on activity that already has been deemed not subject to constitutional protection.[64]

**D.      Failure to State a Claim Upon Which Relief May Be Granted**

In light of the court's determinations regarding standing, the statute of limitations and collateral estoppel, there remain only limited allegations of conduct that the court need consider in evaluating Plaintiffs' FAC under Rule 12(b)(6). The court will address each cause of action in turn.

---

[62] *Id.* at Ex. E (Order Granting In Part and Denying In Part Joint Motion to Modify Permanent Inj.: 12/14/2009), 5:10-26.

[63] *See Hydranautics*, 204 F.3d at 886.

[64] *See Masson v. New Yorker Magazine, Inc.*, 85 F.3d 1394, 1400 (9th Cir. 1996) ("Defensive collateral estoppel applies 'when a defendant seeks to prevent a plaintiff from asserting a claim that the plaintiff has previously litigated and lost against another Defendant.'") (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.4 (1979)).

14

United States District Court
For the Northern District of California

### 1.   Cal. Civ. Code § 52.1

"Section 52.1 authorizes a claim for relief 'against anyone who interferes, or tries to do so, by threats, intimidation, or coercion, with an individual's exercise or enjoyment of rights secured by federal or state law.'"[65] Courts have defined "interferes with" to mean "violates."[66] Section 52.1 provides for damages, injunctive relief, and "other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured."[67] Plaintiff's section 52.1 causes of action[68] are based on purported violations of (1) the California Constitution's Liberty of Speech and Press Clause, (2) California Civil Code § 1708, and (3) California Civil Code § 3479.

### a.   Cal. Const. art. I, § 2(a)

Article I, § 2(a) provides that "[e]very person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right." Plaintiffs contend that Defendants' actions spraying Plaintiffs with fire hoses, shining laser pointers into their eyes and cameras, using ropes on public sidewalks to push against and entangle Plaintiffs and their cameras, and using sticks with mounted pictures to bat at and block Plaintiffs' taping efforts, all have interfered with Plaintiffs' constitutionally-protected free speech videotaping rights through threats and intimidation. These threatening and violent actions have forced Plaintiffs to move and/or halt their speech activities in order to avoid harm to their persons or cameras.

Feld argues that the protections of the California Constitution are not absolute and require "a balancing of competing interests of private property owners and the public interest in assuring the broad dissemination of information."[69] Courts thus allow property owners to impose reasonable time, place and manner restrictions on petitioning activity. Feld contends that Plaintiffs'

---

[65] *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1168 (N.D. Cal. 2009) (quoting *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 331 (1998)).

[66] *See Austin B. v. Escondido Union School Dist.*, 149 Cal. App. 4th 860, 883 (2007) (following *Jones*, 17 Cal. 4th at 338)).

[67] Cal. Civ. Code § 52.1(b).

[68] These are the first and fifth causes of action in the FAC.

[69] *See Costco Companies, Inc. v. Gallant*, 96 Cal. App. 4th 740, 748 (2002).

15

1  videotaping over the loading dock wall is not protected speech, and that Defendants' alleged use of

2  photo-mounted sticks represents the employees' own exercise of their speech rights.

3       On balance, Plaintiffs appropriately present a cause of action based on the August 2010

4  shining of laser pointers into Plaintiffs' cameras and the August 2010 batting and hitting at

5  Plaintiffs' cameras with sticks. Although Feld attributes its conduct with sticks to its own free

6  speech rights—and under section 52.1 "speech alone" is insufficient to form a basis for the claim—

7  this is not the case when the speech threatens violence.[70] Plaintiffs' allegations convey a plausible

8  claim that they might reasonably fear violence by employees armed with enlarged photos of the

9  plaintiffs mounted on sticks. In contrast, the August 2010 spraying of water over the loading dock

10 wall cannot serve as the basis for a section 52.1 claim for the reason that this court already has

11 determined that the speech activity Plaintiffs were engaging in is not protected. The remaining

12 allegations involving ropes and spraying with water are either outside of the statute of limitations,

13 as discussed above, or too conclusory (based only on the phrase "and to the present") to state a

14 plausible claim for relief.

15              **b.   Cal. Civ. Code § 1708**

16      Civil Code § 1708 creates a legal duty to refrain from harming the person or property of

17 another. "Every person is bound, without contract, to abstain from injuring the person or property

18 of another, or infringing upon any of his or her rights."[71] Feld argues that section 1708 does not

19 create a private right of action,[72] that Plaintiffs have not alleged any violation of section 1708

20 because the phrase "injuring the person" as used in the statute means "detrimental physical changes

21

22 _____

  [70] *See* Cal. Civ Code § 52.1(j) ("Speech alone is not sufficient to support an action brought

23 pursuant to subdivision (a) or (b), ***except upon a showing that the speech itself threatens violence***

24 against a specific person or group of persons*; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out

25 the threat.") (emphasis added).

26 [71] Cal. Civ. Code § 1708.

27 [72] *See Katzberg v. Regents of Univ. of California*, 29 Cal. 4th 300, 328 (2002) (rejecting the contention that § 1708 can serve as a basis for a damages action to remedy an asserted violation of

28 due process liberty interests).

Case No.: 5:11-cv-05539-PSG
**ORDER GRANTING-IN-PART FELD ENTERTAINMENT'S MOTION TO DISMISS AND
DENYING FELD ENTERTAINMENT'S ALTERNATIVE MOTION TO STRIKE**

United States District Court
For the Northern District of California

1  to the body,"[73] and that the only injury to property that Plaintiffs have alleged took place was when

2  Plaintiffs were unlawfully videotaping over the wall. Plaintiffs respond that the actions taken by

3  Defendants are in clear violation of this statutory legal duty, which alone may not create a private

4  right of action, but can serve as a basis for action under section 52.1.

5         On balance, the court is not convinced that Plaintiffs' Section 1708-based claim passes

6  muster as currently pleaded. Because Plaintiffs have not alleged a "detrimental physical change" to

7  their person as a result of Defendants' actions, the only legitimate basis for a section 1708 violation

8  under section 52.1 is the alleged injury to Bolbol's property during the videotaping. Nothing in the

9  plain language of section 1708, however, suggests it applies to damage to property during activity

10 previously deemed by a federal court as outside the protection afforded to free speech. In addition,

11 Plaintiffs cite no published California case recognizing a private section 52.1 claim based on any

12 injury to property rights in violation of section 1708.

13              **c.   Cal. Civ. Code § 3479**

14         Plaintiffs also offer section 3479 as an additional basis for Defendants' alleged violation

15 under section 52.1. Section 3479 defines a nuisance, in relevant part, as "[a]nything which is

16 injurious to health . . . offensive to the senses . . . or unlawfully obstructs … any public park,

17 square, street, or highway."[74] Feld argues that section 3479 governs a private nuisance based on a

18 disturbance of rights in land and does not apply to Plaintiffs' claim. Because a nuisance unlawfully

19 obstructs the free passage or use of a public way only "in the customary manner," Feld argues that

20 Plaintiffs' use of the sidewalk to videotape into a private area does not qualify.[75] Plaintiffs respond

21 that use of the sidewalks for free speech expression constitutes a customary use of the sidewalk,

22

23

24  [73] *See Duarte v. Zachariah*, 22 Cal. App. 4th 1652, 1662 (1994) (holding that injury in the context
    of section 1708 requires more than an invasion of a legally protected interest in bodily security, but
25  detrimental physical changes).

26  [74] Cal. Civ. Code § 3479.

27  [75] Docket No. 17 (Defs.' Mem. P. & A. in Supp. of Mot. to Dismiss Pls.' FAC) at 21 (citing *People
    v. Amdur*, 123 Cal. App. 2d Supp. 951, 959 (1954)) ("[T]he streets and sidewalks of a city are
28  designated primarily for travel and for the transportation of goods to and fro thereon.").

Case No.: 5:11-cv-05539-PSG
**ORDER GRANTING-IN-PART FELD ENTERTAINMENT'S MOTION TO DISMISS AND
DENYING FELD ENTERTAINMENT'S ALTERNATIVE MOTION TO STRIKE**

United States District Court
For the Northern District of California

1  which courts have recognized as a "traditional public forum."[76] Plaintiffs argue that their

2  allegations of Defendants' efforts to quell their free speech rights with fire hoses and ropes state a

3  claim for conduct that obstructs public property under section 3479.

4       The court agrees with Feld. Plaintiffs' claims that the use of ropes to obstruct Plaintiffs'

5  presence on the public walkways when animals are being marched to the circus site might

6  otherwise present an actionable claim for relief, but as explained previously, Plaintiffs' rope-based

7  claims cannot survive the statute of limitations. With respect to the use of fire hoses, and in

8  particular the 2010 incident that survives the statute of limitations, Plaintiffs have not cited any

9  case law suggesting that California has ever recognized a claim for private nuisance based on

10  obstruction of activity on a public street that has been previously deemed by a federal court to lie

11  outside the protections afforded to constitutional free speech.

12       **2.  Cal. Civ. Code § 51.7**

13       Section 51.7 protects an individual's "right to be free from any violence, or intimidation by

14  threat of violence, committed against their persons or property because of political affiliation."[77]

15  To be actionable, the "violence" or "intimidation" need not be "extreme or motivated by hate, as

16  section 51.7 "create[s] civil liability which sweeps more broadly than the common, colloquial

17  meaning the phrase 'hate crime.'"[78] Instead, the test under section 51.7 is "whether a reasonable

18  person, standing in the shoes of the plaintiff, would have been intimidated by the actions of the

19  defendant and have perceived a threat of violence?"[79]

---

[76] *See ACLU v. City of Las Vegas*, 333 F.3d 1092, 1099 (9th Cir. 2003) ("The quintessential traditional public forums are sidewalks, streets, and parks.") (quoting *United States v. Grace*, 461 U.S. 171, 177 (1983)).

[77] Cal. Civ. Code § 51.7(a).

[78] *Winarto v. Toshiba Am. Electr. Components, Inc.*, 274 F.3d 1276, 1289 (9th Cir. 2001).

[79] *Id.* (quoting Donna J. Hitchens & Robert D. Links, *California Civil Practice: Civil Rights Litigation § 3:4*).

Case No.: 5:11-cv-05539-PSG
**ORDER GRANTING-IN-PART FELD ENTERTAINMENT'S MOTION TO DISMISS AND DENYING FELD ENTERTAINMENT'S ALTERNATIVE MOTION TO STRIKE**

Feld argues that the FAC alleges no "protected characteristic" and that the alleged conduct with laser pointers, ropes, and photos mounted on sticks is not inherently threatening.[80] Feld also argues that Plaintiffs have suffered no harm from the alleged conduct, other than the damaged video camera which resulted from Plaintiffs' unlawful attempts to videotape over the loading dock wall. Plaintiffs respond that the FAC provides significant factual detail regarding Plaintiffs' political affiliation as animal rights advocates and the long history of acts by Defendants taken against Plaintiffs because of that affiliation. Plaintiffs also contend that the use of fire hoses have long been considered tools of physical force and intimidation historically used against peaceful protestors.

As discussed above, the only incidents that the court will consider, and that are currently pleaded, involve the photo-mounted sticks and laser pointers in cameras. In light of the history between Plaintiffs and Defendants, the allegation that employees had Plaintiffs' photographs blown-up and mounted on sticks establishes a plausible claim for intimidation. This is especially true given that the photo-mounted sticks were being used to bat at Plaintiffs' cameras. Feld cites to several cases to support its contention that the acts did not rise to a threat of violence, but none of those cases involve analogous circumstances. Plaintiffs' political affiliation and purpose for being present at the circus events were also well-known to Defendants. In light of the potential for damage and personal injury, the laser pointers aimed at Plaintiffs' cameras could also reasonably be perceived as constituting a "threat of violence." The spraying of water with a fire hose is a closer question, but again, in light of the potential damage and personal injury, Plaintiffs have again alleged facts sufficient to suggest that they and their property were the intended recipients, of Defendants' express intent to harm particular persons or property.[81]

---

[80] *See* Docket No. 17 (Defs.' Mem. P. & A. in Supp. of Mot. to Dismiss Pls.' FAC) at 16 ("[P]laintiffs have not alleged any violent acts or threats thereof.").

[81] *See Ramirez v. Wong*, 188 Cal. App. 4th 1480, 1486 (2010) (finding that a threat of violence necessarily requires some expression of intent to injure or damage plaintiffs or their property).

Case No.: 5:11-cv-05539-PSG
**ORDER GRANTING-IN-PART FELD ENTERTAINMENT'S MOTION TO DISMISS AND DENYING FELD ENTERTAINMENT'S ALTERNATIVE MOTION TO STRIKE**

### 3.  "Tort of Intentional Property Damage Vandalism"

In their third cause of action, Plaintiffs allege that Defendants' "actions in spraying water on Plaintiff Bolbol and her camera were willful and malicious with the intent to destroy or damage Plaintiff's property" and that Feld was "negligent in allowing their employees to use fire hoses to harass and interfere with Plaintiffs' free speech activity resulting in the damage of Plaintiff Bolbol's video camera."[82] Feld argues that "vandalism" is not a private action and cannot serve as the basis for an actionable tort in California. If Plaintiff instead seeks to state a cause of action under Cal. Civ. Code § 1708, Feld argues that the FAC fails to do so because the complaint merely attributes negligence to Feld without averring any legal duty owed to Plaintiffs, and because no duty is owed where Plaintiff was engaged in unlawful behavior.

Plaintiffs agree that an actionable tort in California requires "a legal duty owed by a defendant to the one injured,"[83] but contend that Cal. Civ. Code § 1708 codifies just such a legal duty. Plaintiffs further argue that the facts alleged are sufficient for the court to draw the reasonable inference that Feld is responsible for the water being sprayed at Bolbol's camera.

The court agrees with Feld. Plaintiffs have cited to no case law suggesting that California has recognized "vandalism" as a private cause of action or an actionable tort, let alone one based on obstruction of activity on a public street that has been previously deemed by a federal court to lie outside the protections afforded to constitutional free speech.

### 4.  Intentional Infliction of Emotional Distress

A claim for intentional infliction of emotional distress exists when the plaintiff establishes: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."[84] Conduct is deemed "'outrageous' when it is so extreme as to

---

[82] Docket No. 13 (FAC) ¶¶ 61, 62.

[83] *See* Docket No. 26 (Pls.'Opp'n to Defs.' Mot. to Dismiss) at 17 (citing *Johnson v. Harcourt*, 43 Cal. App. 3d 880, 897 (1974)).

[84] *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (citations omitted).

20

Case No.: 5:11-cv-05539-PSG
**ORDER GRANTING-IN-PART FELD ENTERTAINMENT'S MOTION TO DISMISS AND DENYING FELD ENTERTAINMENT'S ALTERNATIVE MOTION TO STRIKE**

1    exceed all bounds of that usually tolerated in a civilized community."[85] "The defendant's conduct

2    must be intended to inflict injury or engaged in with the realization that injury will result."[86]

3         Feld argues that the conduct alleged in the FAC does not meet the high bar for an

4    intentional infliction of emotional distress cause of action. Even taking into account the full range

5    of Plaintiffs' allegations including hoses, laser pointers, ropes and sticks, Feld contends that these

6    constitute "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities"[87]

7    as opposed to "extreme and outrageous" conduct. According to Feld, this is evidenced by

8    Plaintiffs' own admission that they have returned to the circus over many years, allegedly enduring

9    the same response from Defendants. The repeated return of Plaintiffs to engage in the same

10   behavior undermines any claim for extreme emotional distress, defined as "emotional distress of

11   such substantial quality or enduring quality that no reasonable person in a civilized society should

12   be expected to endure it."[88]

13        Plaintiffs respond that the allegations are sufficient to state a plausible claim for extreme

14   and outrageous conduct, repeated over the course of many years, and causing severe emotional

15   distress. Plaintiffs argue that being subjected consistently to treatment like that employed by

16   Defendants "is emotionally intolerable." Plaintiffs note that their long history of circus activism has

17   subjected them to deprivations of their free speech rights, to harassment, and has required them to

18   initiate multiple rounds of litigation in an effort to protect their rights and their emotional stability

19   from Defendants' activities. "The emotional distress Plaintiffs have suffered at the hands of

20   Ringling is not merely the result of Ringling's conduct it is the object. 'No reasonable person in a

21   civilized society should be expected to endure' this kind of emotional distress for merely

22   attempting to peacefully exercise their constitutionally-protected free speech rights."[89]

[85] *Id.* at 1050-51 (citations omitted).

[86] *Id.* at 1051.

[87] *See id.*

[88] *See id.* (citations omitted).

[89] Docket No. 26 (Pls.'Opp'n to Defs.' Mot. to Dismiss) at 20 (citing *Hughes*, 46 Cal. 4th at 1051).

21

Case No.: 5:11-cv-05539-PSG
**ORDER GRANTING-IN-PART FELD ENTERTAINMENT'S MOTION TO DISMISS AND
DENYING FELD ENTERTAINMENT'S ALTERNATIVE MOTION TO STRIKE**

Here, Plaintiffs' FAC does not contain factual allegations sufficient to support a claim for severe emotional distress. Even if the court were to consider all of the alleged behavior, from fire hoses to ropes to laser pointers to sticks used to mock and bat at Plaintiffs, Plaintiffs never state what emotional distress they have suffered as a result. The FAC merely states: "Defendants' conduct was outrageous when they intentionally interfered with Plaintiffs' rights through harassment, threats and intimidation with the use of ropes, laser pointers, fire hoses and sticks with posted pictures of Plaintiffs. As a direct and proximate result of Defendants' violation of Plaintiffs' rights, Plaintiffs sustained injuries and damages as set forth above."[90] These facts are insufficient to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged," especially in light of the level of harm required for this claim.

### 5.      Injunctive Relief for Harassment Under Cal. Civ. P. § 527.6

In addition to equitable relief available under Civil Code sections 52.1 and 51.7, Plaintiffs seek a permanent injunction pursuant to California Code of Civil Procedure § 527.6(a) and (b). This code section provides for the issuance of a temporary restraining order or injunction on behalf of a person who has suffered harassment, defined in relevant part as "a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys or harasses the person, and that serves no legitimate purpose."[91] "Course of conduct" is defined as "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose."[92] A course of conduct does not include "constitutionally protected activity."[93] To be actionable, the course of conduct "must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner."[94]

---

[90] Docket No. 13 (FAC) ¶¶ 64, 65.

[91] Cal. Code Civ. P. § 527.6(b)(3).

[92] *Id.* § 527.6(b)(1).

[93] *Id.*

[94] *Id.* § 527.6(b)(3).

22

**ORDER GRANTING-IN-PART FELD ENTERTAINMENT'S MOTION TO DISMISS AND DENYING FELD ENTERTAINMENT'S ALTERNATIVE MOTION TO STRIKE**

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Plaintiffs seek provisional and permanent injunctive relief to protect themselves against future harassment, threats, intimidation, and interference with their expressive activities. Without such relief, Plaintiffs contend that they will be irreparably harmed by Defendants' continuing actions in response to Plaintiffs' activism, which they "have no intention of ending."[95] Feld argues that none of Plaintiffs allegations rise to the level of harassment required to obtain an injunction under section 527.6. Feld challenges Plaintiffs' assertion that they have established a reasonable probability of future harm, arguing that at most Plaintiffs have asserted isolated incidents of past conduct. Plaintiffs do not, for example, allege any wrongdoing by Defendants in connection with Ringling Bros.'s 2011 appearance in San Jose.

The examples of "course of conduct" cited by the statute include "following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by any means."[96] Clearly this statute is intended at harassment of a personal nature, notwithstanding the language the statute's broader language proscribing "conduct directed at a specific person that seriously alarms, annoys or harasses the person." Even if the court were to find that Plaintiffs have alleged facts sufficient to support a claim of harassment over time, Plaintiffs' have not set forth no facts to support a finding that Defendants' conduct "actually cause[d] substantial emotional distress to the petitioner." Nor do Plaintiffs reference any case law that would substantiate the sufficiency of the facts they have alleged to support such a finding. In view of these deficiencies, Plaintiffs' claim for injunctive relief must be dismissed.

---

[95] *See* Docket No. 13 (FAC) ¶ 79.

[96] Cal. Code Civ. P. § 527.6(b)(1).

23

Case No.: 5:11-cv-05539-PSG
**ORDER GRANTING-IN-PART FELD ENTERTAINMENT'S MOTION TO DISMISS AND DENYING FELD ENTERTAINMENT'S ALTERNATIVE MOTION TO STRIKE**

# IV.    CONCLUSION

Consistent with the above discussion, Feld's motion to dismiss is GRANTED-IN-PART with leave to amend. Any further amended complaint shall be filed no later than June 22, 2012. **IT IS SO ORDERED.**

Dated: 6/4/2012

PAUL S. GREWAL
United States Magistrate Judge

Case No.: 5:11-cv-05539-PSG
**ORDER GRANTING-IN-PART FELD ENTERTAINMENT'S MOTION TO DISMISS AND DENYING FELD ENTERTAINMENT'S ALTERNATIVE MOTION TO STRIKE**