UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DENIZ BOLBOL and JOSEPH CUVIELLO, INDIVIDUALLY,<br><br>     Plaintiffs,<br>  v.<br><br>FELD ENTERTAINMENT, INC. (dba RINGLING BROS. and BARNUM & BAILEY CIRCUS); JAMES DENNIS; MATTHEW GILLET; and DOES 1-10,<br><br>     Defendants. | Case No.: C 11-5539 PSG<br><br>**ORDER DENYING SHANNON CAMPBELL'S MOTION TO INTERVENE; DENYING FELD ENTERTAINMENT'S MOTION TO DISMISS AND ALTERNATIVE MOTION TO STRIKE; AND GRANTING-IN-PART BOLBOL'S MOTION TO AMEND PLEADINGS**<br><br>**(Re: Docket Nos. 41, 55, 78)** |

At issue in this case are three related motions brought by three different parties. First, on May 28, 2012, Shannon Campbell ("Campbell") moved to intervene pursuant to Fed. R. Civ. P. 24, as a matter of right under Rule 24(a) or alternatively for permissive intervention under Rule 24(b). Second, on July 13, 2012, Defendants Feld Entertainment ("Feld"), dba Ringling Bros. and Barnum & Bailey Circus ("Ringling Bros."), James Dennis ("Dennis"), Matthew Gillet ("Gillet"), and Does 1-10 (collectively "Defendants") filed a motion to dismiss or alternatively a motion to strike portions of the Second Amended Complaint ("SAC") brought by Plaintiffs Deniz Bolbol ("Bolbol") and Joseph Cuviello ("Cuviello")[1] (collectively "Plaintiffs"). Third and finally, on

---
[1] The court notes that Cuviello is proceeding pro se.

1

Case No.: 11-5539 PSG
ORDER

August 19, 2012, Plaintiffs moved to amend and supplement their SAC and file a Third Amended Complaint ("TAC").

In an effort to move this case forward, the court addresses all three motions together. Having considered the arguments and papers, the court DENIES Campbell's motion to intervene, DENIES as moot Defendants' motions to dismiss or to strike and GRANTS-IN-PART Plaintiffs' motion to amend.

## I. BACKGROUND

The motions currently before the court are only the most recent battles between Plaintiffs and Defendants over the treatment of circus animals and the rights of the people who protest that treatment. Confrontations occur not only in the courtroom; the parties continually clash at various sites where Defendants perform and Plaintiffs protest the circus and gather intelligence about the conditions of the animals.

The repeated on-the-ground conflicts between the parties have resulted in numerous legal disputes, and in 2004 the parties achieved a détente of sorts. In *Bolbol et al. v. Ringling Bros. and Barnum & Bailey Circus, et al.*, 04-cv-00082-JW ("2004 litigation"), which involved several of the same parties and related issues, Plaintiffs obtained injunctive relief in connection with their speech activities, though the court issuing the injunction also noted the protection was limited in scope. As this court noted in its June 4, 2012 order dismissing most of Plaintiffs' claims ("June 4 order"), that decision plays a significant role in this case.

The parties are familiar with the facts of the case, which the court provided in detail in its June 4 order.[2] For the purposes of this order, therefore, the court offers only the procedural background of the three motions at issue.

### 1. First Amended Complaint, June 4, 2012 Order, Motion to Intervene

Plaintiffs filed the instant action in the Superior Court of Santa Clara County on August 19, 2011, and Defendants removed the complaint to this court on November 16, 2011.[3] On December

---

[2] *See* Docket No. 43.

[3] The court finds that jurisdiction and venue are proper pursuant to 28 U.S.C. § 1332 and § 1441, respectively.

2

Case No.: 11-5539 PSG
ORDER

21, 2011, Defendants moved to dismiss Plaintiffs' First Amended Complaint ("FAC"),[4] which this court granted-in-part. Citing standing issues, statute of limitation bars, and the estoppel effect of the holdings in the 2004 litigation, the court in the June 4 order dismissed all but two of Plaintiffs' claims: (1) their claim under California Civil Code Section 51.7 that they were the intended recipients of Defendants' express intent to harm particular persons or property; and (2) their claim under California Civil Code Section 52.1 that Defendants engaged in intimidation through the use of laser pointers and sticks with enlarged photos to prevent Plaintiffs from exercising speech rights protected by Article I, Section 2 of the California Constitution.[5] The court dismissed the remaining claims with leave to amend.

Before the court ruled on Defendants' first motion to dismiss, Campbell moved on May 28, 2012 to intervene, ostensibly to cure the standing issue raised by Defendants and which the court found dispositive for some of Plaintiffs' factual allegations.[6]

### 2. Second Amended Complaint

On June 22, 2012, Plaintiffs filed their Second Amended Complaint ("SAC"), in which they made certain additional factual allegations to correct the deficiences in their first attempt.[7] They added specific dates to their allegations, stating that on August 21, 2008, and August 18, 19, and 20, 2010, Defendants used "laser pointers to harass and interfere" with Plaintiffs' videotaping of the treatment of the circus animals,[8] and that on numerous occasions, and particularly on August 12, 2008 in Oakland and August 25, 2009 in Sacramento, Defendants used ropes to interfere with Plaintiffs' "free use of public streets and free speech rights."[9] Plaintiffs added an allegation that when Defendants sprayed Bolbol's camera with water and "rendered [it] inoperable," they intended

---

[4] *See* Docket No. 18.

[5] *See* Docket No. 43.

[6] *See* Docket No. 41.

[7] *See generally* Docket No. 52.

[8] *See* Docket No. 52 ¶¶ 36-37.

[9] *See id.* ¶¶ 42-43.

3

Case No.: 11-5539 PSG
ORDER

to prevent her from videotaping "areas that have already been designated as public fora."[10] Plaintiffs also alleged that as a result of Defendants' actions, Plaintiffs suffered "severe stress and anxiety, depression, and loss of sleep" and that the emotional distress "has been cumulative."[11]

Plaintiffs claimed that the factual allegations supported five causes of action: (1) violations of Plaintiffs' free speech rights under Article 1, Section 2(a) of the California Constitution, (2) violations of California Civil Code Section 51.7 for threats and intimidation on the basis of political affiliation, (3) intentional infliction of emotional distress, (4) violations of California Civil Code Section 52.1 based on Civil Code Sections 1708 and 3479, and (5) injunctive relief for harassment pursuant to California Code of Civil Procedure Section 527.6.  They again sought compensatory, punitive, and treble damages, civil penalties, injunctive relief, and attorney's fees and costs.  On July 13, 2012, Defendants moved to dismiss the SAC or in the alternative to strike portions of it, and Plaintiffs opposed.[12]

### 3. Proposed Third Amended Complaint

On August 19, 2012, before the court issued an order regarding Defendants' second motion to dismiss, Plaintiffs sought leave to amend the SAC and file a Third Amended Complaint ("TAC").[13]  In the proposed TAC, Plaintiffs added factual allegations regarding events occurring after they filed the original complaint: (1) on August 30, 2011, Defendants used a rope to interfere with Cuviello's protest activities in Daly City; (2) on July 8, 2012, Defendants' employees threw a plastic bottle and wooden sticks at Cuviello while he was videotaping in a backstage area of a Fresno arena; and (3) on August 7, 2012, Defendants' employees used a rope and "their bodies to push and assault and batter" Cuviello and Bolbol to prevent them from videotaping the animals.

Plaintiffs also raised four new causes of action, and added two defendants, Mike Stuart ("Stuart"), Director of Circus Operations, and David Bailey ("Bailey"), Assistant General Manager

---

[10] *See id.* ¶ 53.

[11] *See id.* ¶ 57.

[12] *See* Docket Nos. 68, 69.

[13] *See* Docket No. 78.

4
Case No.: 11-5539 PSG
ORDER

of Ringling Bros. Blue Unit.  In addition to the five causes of action raised in the SAC, Plaintiffs added claims for: (1) violations of 42 U.S.C. § 1983 based on Defendants' infringement of Plaintiffs' First Amendment speech rights under the Federal Constitution; (2) assault and battery based on Defendants' employees' actions at the protests; (3) trespass to chattel based on damage to Bolbol's camera; (4) negligent supervision by Defendants of their employees; and (5) violations of the First Amendment and California Civil Code Section 43 as bases for their claims under California Civil Code Section 52.1.  Plaintiffs also added requests for injunctive relief under California Civil Code Section 52.1(b) and 52(c)(3) to their claim for relief under California Code of Civil Procedure Section 526(a)(1).

## II. LEGAL STANDARDS

### A.   Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[14]  If a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[15]  A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[16]  Accordingly, under Fed. R. Civ. P. 12(b)(6), which tests the legal sufficiency of the claims alleged in the complaint, "[d]ismissal can based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[17]

On a motion to dismiss, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.[18]  The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and

---

[14] Fed. R. Civ. P. 8(a)(2).

[15] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

[16] *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1940, 173 L.Ed.2d 868 (2009).

[17] *Balistreri v. Pacifica Police Dep't.,* 901 F.2d 696, 699 (9th Cir. 1990).

[18] *See Metzler Inv. GMBH v. Corinthian Colls., Inc.,* 540 F.3d 1049, 1061 (9th Cir. 2008).

5
Case No.: 11-5539 PSG
ORDER

matters of which the court may take judicial notice.[19] However, the court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences.[20] "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear … that the complaint could not be saved by amendment."[21]

**B.    Leave to Amend**

When a scheduling order has been issued with deadlines for amending the pleadings and that deadline has passed, a plaintiff first must comply with Fed. R. Civ. P. 16(b)(4) to modify the scheduling order to allow for late amendments.[22] Fed. R. Civ. P. 16(b)(4) requires a "good cause" showing.  The focus of the good cause inquiry in the Rule 16(b) context is the "diligence of the party seeking the modification," in particular whether the party was "diligent in assisting the [c]ourt to create a workable schedule at the outset of litigation," whether "the scheduling order imposes deadlines that have become unworkable notwithstanding its diligent efforts to comply" and whether the party was "diligent in seeking the amendment once it became apparent that extensions were necessary."[23]

If a plaintiff has successfully shown good cause, then pursuant to Fed. R. Civ. P. 15(a)(1), a plaintiff "may amend its pleading once as a matter of course" within 21 days after serving the complaint or, if a responsive pleading is required, within 21 days after service of a responsive pleading or 21 days after service of a motion under Fed. R. Civ. P. 12(b), (e), or (f).  Any subsequent amendments require "the opposing party's written consent or the court's leave."[24] "The court should freely give leave when justice so requires."[25]

---

[19] *See id.* at 1061.

[20] *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001); s*ee also Twombly*, 550 U.S. at 561 ("a wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

[21] *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003).

[22] *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

[23] *Adobe Systems Inc. v. Coffee Cup Partners, Inc.*, No. C 11-2243 CW, 2012 WL 3877783, at *6 (N.D. Cal. Sept. 6, 2012) (citing *Johnson*, 975 F.2d at 609).

[24] Fed. R. Civ. P. 15(a)(2).

6

Case No.: 11-5539 PSG
ORDER

**C.    Intervention**

Pursuant to Fed. R. Civ. P. 24, a party may intervene in an ongoing action either as a matter of right or with permission from the court. The court "must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."[26] The court may allow intervention when a party "has a claim or defense that shares with the main action a common question of law or fact."[27] When considering whether to permit intervention, the court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."[28]

### III. DISCUSSION

**A.    Leave to Amend**

On August 19, 2012, before the court ruled on Defendants' motion to dismiss the SAC, Plaintiffs moved for leave to amend the SAC and file a TAC. As described above, they seek to add new factual allegations about events occurring subsequent to the filing of their original complaint and to add new causes of action and new defendants.

Plaintiffs styled their request as a leave to amend their pleadings pursuant to Rule 15(a), but they should have instead requested modification of the scheduling order pursuant to Rule 16(b).[29] This court issued a scheduling order on December 9, 2011, and set a deadline of sixty days from entry of the order for joinder of additional parties and amendment to the pleadings.[30] The parties

---

[25] *Id.*

[26] Fed. R. Civ. P. 24(a)(2).

[27] *Id.* 24(b)(1)(B).

[28] *Id.* 24(b)(3).

[29] *See Johnson*, 975 F.2d at 609.

[30] *See* Docket No. 15.

7

Case No.: 11-5539 PSG
ORDER

had until February 7, 2012, to amend their pleadings without requiring leave from the court to modify the order.[31] That deadline has long since passed.

Although the court could deny Plaintiffs' motion to amend solely upon their failure to seek modification of the scheduling order,[32] in an exercise of its discretion, it will treat Plaintiffs' motion as a de facto motion to modify the scheduling order.[33] The first step is a determination whether Plaintiffs have shown good cause to modify the scheduling order under Rule 16(b), and if so, the inquiry shifts to whether they should be given leave under Rule 15(a).[34] "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking amendment."[35]

### 1. Fed. R. Civ. P. 16(b)

In the proposed TAC, Plaintiffs seek to add new factual allegations, new causes of action, and new defendants.[36] The new factual allegations include confrontations between Plaintiffs and Defendants occurring on August 30, 2011, July 8, 2012, and August 7, 2012.[37] The allegations arising from confrontations taking place after Plaintiffs filed the SAC are supported by good cause because Plaintiffs have been diligent in adding them.[38] Plaintiffs sought leave to amend their complaint less than two months after the events occurred.

---

[31] *See id.*

[32] *See Johnson*, 975 F.2d at 609.

[33] *Cf. Liberty Mut. Inc. Co. v. Cal. Auto Assigned Risk Plan*, No. C-11-1419 MMC, 2012 WL 3277213 (N.D. Cal. Aug. 9, 2012).

[34] *See Johnson*, 975 F.2d at 608.

[35] *See id.*

[36] *See* Docket No. 78.

[37] *See id.*

[38] *See Johnson*, 975 F.2d at 609 (noting the primary consideration in the good cause determination is plaintiff's diligence).

8
Case No.: 11-5539 PSG
ORDER

The addition of factual allegations from August 30, 2011, however, does not reflect the same diligence on the part of Plaintiffs. They had at least two earlier opportunities to add those allegations to their complaint: on December 7, 2011 when they filed the FAC and on June 22, 2012 when they filed the SAC. Plaintiffs' choice to wait until their third attempt to add allegations that occurred over three months before the FAC and nearly ten months before the SAC is a delay incompatible with the "good cause" standard under Rule 16(b).

Plaintiffs request to add two new defendants, Stuart and Bailey, arising out of their participation and supervision of the events occurring on August 7, 2012.[39] In their reply, however, Plaintiffs seem to suggest that Bailey and Stuarts' supervision predates that interaction, stating that they "acted as supervisors of [Defendants'] employees engaged in rope-based harassment, which culminated in the events of August 7, 2012."[40] The court is unclear to what extent Plaintiffs seek to add the new defendants, but finds good cause only for Plaintiffs' request to add Stuart and Bailey as defendants for the allegations arising out of the August 7, 2012 confrontation. To the extent Plaintiffs seek to bring any other claims against Stuart and Bailey, the court finds Plaintiffs failed to exercise the diligence required by Rule 16(b). As Defendants point out, Stuart has been Defendants' employee for eight years and Bailey has been an employee for two years.[41] Plaintiffs had ample opportunity to raise those claims against Stuart and Bailey in one of the three earlier complaints.

Turning to the new causes of action, Plaintiffs want to amend their claims to include: (1) violation of their First Amendment speech rights under 42 U.S.C. § 1983; (2) assault and battery; (3) trespass to chattel; (4) negligent supervision; and (5) violations of their First Amendment rights and California Civil Code Section 43 as bases for their claim under California Civil Code Section 52.1.[42] They also seek to add injunctive relief under California Civil Code Sections 52.1 and 52(c)(3) and California Code of Civil Procedure Section 526(a)(1).[43]

---

[39] *See* Docket No. 78.

[40] Docket No. 88.

[41] *See* Docket No. 85.

9

Case No.: 11-5539 PSG
ORDER

Plaintiffs fail to provide good cause for adding the 42 U.S.C. § 1983 claim, the First Amendment violation to support a claim under California Civil Code Section 52.1, and the trespass to chattels claim. The factual allegations supporting those claims – that Defendants use threats and harassment to deprive Plaintiffs of speech rights and that Defendants damaged Bolbol's camera by spraying water on it – arose from events described in the original complaint. The request to add alternative theories for injunctive relief likewise arose from the original events giving rise to this litigation. Plaintiffs' failure to raise those claims in their FAC or their SAC reveals their lack of diligence in pursuing those claims. Plaintiffs argue that they are merely curing the flaws the court identified in June 4 order.[44] But curing the flaws in the FAC was the reason the court gave leave to file the SAC. Plaintiffs had their chance to cure their complaint; their failure to do so at the appropriate time is not reason now to allow further amendment. They have failed to show good cause for the court now to amend the scheduling order to add those claims.

The assault and battery claim, the negligent supervision claim, and the violation of California Civil Code Section 43, which protects people from "bodily restraint or harm," arose from the events occurring after the SAC was filed, and so the court finds Plaintiffs were diligent in pursuing those claims. Good cause thus exists to allow the Plaintiffs to add them to their complaint. Plaintiffs are limited, however, to raising those claims only on the factual allegations arising out of the 2012 confrontations – Plaintiffs cannot use those claims for the earlier disputes with Defendants because they have shown no good cause for their failure to add them earlier.

To summarize, the court finds good cause under Rule 16(b) to amend the scheduling order so Plaintiffs can add factual allegations regarding the events of July and August 2012. Plaintiffs also may add the causes of action arising out of those claims – specifically the negligent supervision, assault and battery, and California Civil Code 43 claims – and add Stuart and Bailey as defendants only as to those recent events.

---

[42] *See* Docket No. 78.

[43] *See id.*

[44] *See* Docket No. 88.

Case No.: 11-5539 PSG
ORDER

### 2. Fed. R. Civ. P. 15(a)

The court also finds that leave to amend is appropriate for all but the negligent supervision claim against Stuart and Bailey under Rule 15(a), which is the second determination the court must make before permitting amendment.[45] The Ninth Circuit has instructed that Rule 15(a) is "very liberal" and leave to amend should only be denied when the amendment: (1) "prejudices the opposing party"; (2) "is sought in bad faith"; (3) "produces undue delay in litigation"; or (4) "is futile."[46] The court may also consider whether Plaintiffs have exhibited "repeated failure to cure deficiencies by amendments previously allowed."[47]

#### a. Bad Faith

Defendants first argue that Plaintiffs engage in "cyclical" amendments that reveal a bad faith motive.[48] The court disagrees. As a matter of right, Plaintiffs could file the FAC without leave of court, and they filed the SAC pursuant to this court's leave to amend after the June 4 order. The proposed TAC is the only amended complaint for which Plaintiffs have requested leave and does not evince a bad faith motive.

#### b. Prejudice

Defendants next argue that they will be prejudiced because they must respond with time, money, and other resources to Plaintiffs' amended complaints.[49] Citing *Davis v. Astrue*,[50] Defendants argue that like the plaintiff in that case, Plaintiffs here have engaged in "repeated amendments to the complaint" that ultimately prejudice Defendants and "weigh against granting leave to amend."[51] To the degree that Plaintiffs attempt to add new legal theories and facts they

---

[45] *See Johnson*, 975 F.2d at 609.

[46] *AmerisourceBergen Corp. v. Dialysist West Co.*, 465 F.3d 946, 951 (9th Cir. 2006).

[47] *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 893 (9th Cir. 2010).

[48] *See* Docket No. 85.

[49] *See id.*

[50] 250 F.R.D. 476, 482 (N.D. Cal. May 2, 2008).

11
Case No.: 11-5539 PSG
ORDER

could have added earlier, the court agrees with Defendants' argument. But the only amendments that survived the Rule 16(b) inquiry are the factual allegations and causes of action arising after Plaintiffs filed the SAC. The new allegations are similar to the earlier allegations and the causes of action do not present a radical departure in legal theory, such that at this point Defendants would be prejudiced in presenting a defense.[52] The court finds leave to amend would not prejudice Defendants.

### c.      Futility

Defendants argue that leave to amend should be denied because Plaintiffs' claims are futile. "Under futility analysis," denial of leave to amend "is improper unless it is clear . . . that the complaint could not be saved by any amendment."[53] Here, Plaintiffs allege that in the July 2012 and August 2012 encounters Defendants' employees threw bottles and sticks and used their bodies and ropes to interfere with Plaintiffs' activities. Under California law, battery is "any intentional, unlawful and harmful contact by one person with the person of another."[54] Assault is "a demonstration of an unlawful intent by one person to inflict immediate injury on the person of another then present."[55] California Civil Code Section 43 protects against bodily restraint or harm. The allegations Plaintiffs present, therefore, state a plausible cause of action for assault-and-battery and a violation of the protection against bodily harm provided in California Civil Code Section 43.

The court agrees, however, that Plaintiffs' negligent supervision claim is problematic. To the extent that Plaintiffs raise the claim against Stuart and Bailey, the cause of action could not survive amendment. Under California law, employers are liable "for negligent supervision of an employee if [they] knew or should have known that hiring the employee created a particular risk or

---

[51] *Id.*; *see* Docket No. 85.

[52] *Cf. Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (finding denial of leave to amend for prejudice to opposing party appropriate where "new claims set forth in the amended complaint would have greatly altered the nature of the litigation" and forced defendants into "an entirely new course of defense").

[53] *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

[54] *Ashcraft v. King*, 228 Cal. App. 3d 604, 611 (1991)

[55] *Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 1603-04 (2012).

12
Case No.: 11-5539 PSG
ORDER

hazard, and that particular harm materializes."[56]  Liability only attaches to "the entity which employed the alleged offender, not against other individuals who were involved in hiring or supervising that person."[57]  Plaintiffs seek to bring the cause of action against Bailey and Stuart based on the men's supervision of Defendants' employees,[58] but they make no allegations – nor could they – that Bailey and Stuart are the employing entity as opposed to merely supervisors of the employees.  Thus, Plaintiffs' claims of negligent supervision against Bailey and Stuart are futile.

Plaintiffs also seek to bring a negligent supervision cause of action against Feld Entertainment, Inc ("Feld").  Plaintiffs point to the ongoing litigation to allege that Feld knew or should have known that its employees were likely to engage in tortious conduct against Plaintiffs.[59]  They assert that Feld's failure to properly supervise the employees in light of that knowledge constitutes negligent supervision.[60]  The court finds that, although perhaps not with the most clarity, Plaintiffs have alleged sufficient facts to state a claim of negligent supervision against Feld and therefore is not futile.

### d. Undue Delay

Defendants argue that allowing amendment of the complaint would unduly delay the litigation, especially in light of the August 31, 2012 fact discovery cut-off and the December 18, 2012 deadline for dispositive motions.[61]  Neither party has moved to amend the scheduling order, which set a trial date of February 19, 2013.  Plaintiffs argue that any delay is as much a result of Defendants' motions to dismiss as caused by their amended complaints.[62]

---

[56] *Brantley v. Boyd*, Case No. 07-6139 SC, 2011 WL 1225630, at *9 (N.D. Cal. Apr. 1, 2011) (internal citations omitted).

[57] *Taylor v. Ron's Liquors Inc.*, Case No. C 10-00694 SI, 2010 WL 4010140, at *3 (N.D. Cal. Oct. 13, 2010).

[58] *See* Docket No. 88.

[59] *See* Docket Nos. 78-2, 88.

[60] *See* Docket Nos. 78-2, 88.

[61] *See* Docket Nos. 85, 15.

13
Case No.: 11-5539 PSG
ORDER

Undue delay, alone, cannot provide the basis for denying leave to amend a complaint.[63] Aside from the negligent supervision claims against Stuart and Bailey, the court found no other prong supports denying leave to amend for the remaining claims that survived the Rule 16(b) inquiry. The court, therefore, will not deny leave to amend solely on the basis that it might cause undue delay.

The court nevertheless recognizes that this case needs to move past the pleading stage, especially in light of the rapidly approaching trial date. Plaintiffs may file a TAC within seven days that complies with the court's instructions above – namely limiting their amendments to the factual allegations and claims arising from July and August 2012 – but may not make any other amendments to the complaint. They have had now four opportunities to correct their pleadings, which is more than sufficient to satisfy the liberal standard under Rule 15(a).[64] The TAC as filed will be the pleadings upon which the case will proceed.

**B.      Motion to Dismiss and Motion to Strike**

Because the court has granted Plaintiffs leave to amend the TAC to add allegations regarding confrontations with Defendants in July and August 2012, the court dismisses Defendants' motion to dismiss and motion to strike the SAC as moot.[65] The court emphasizes, however, that this dismissal is without prejudice and does not reflect on the merits of Defendants' motion.

**C.      Intervention**

Campbell seeks to intervene in this action pursuant to Fed. R. Civ. P. 24(a), which governs intervention as a matter of right, or pursuant to Fed. R. Civ. P. 24(b), which governs permissive intervention.

---

[62] *See* Docket No. 88.

[63] *See Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999).

[64] *See, e.g.*, *Ferris v. City of San Jose*, Case No. 11-cv-01752-LHK, 2012 WL 1355715, at *11 (N.D. Cal. Apr. 18, 2012); *Adams v. Kraft*, Case No. 10-cv-00602-LHK, 2011 WL 3240598, at *7 (N.D. Cal. July 29, 2011).

[65] *See Baker v. Lewis*, Case No. 11-3493 LHK, 2012 WL 1932867, at *1 (N.D. Cal. May 29, 2012).

14
Case No.: 11-5539 PSG
ORDER

### 1. Intervention as a Matter of Right

To intervene as a matter of right, a party must meet four requirements: (1) the application is timely; (2) the party "has a 'significantly protectable interest' relating to the property or transaction involved in the pending lawsuit"; (3) "disposition of the lawsuit may adversely affect the [party's] interest unless intervention is allowed"; and (4) "the existing parties do not adequately protect the [party's] interests."[66] The burden is on the party seeking intervention to show all four factors, but motions to intervene are "interpreted broadly in favor of intervention."[67] Because the court finds that Campbell does not have a protectable interest that is related to the transaction in Plaintiffs' lawsuit and that disposition of the lawsuit will not adversely affect Campbell's interest, the court does not address the first or fourth factors.

Campbell argues that she has a "significantly protectable interest" related to Plaintiffs' suit because, like Plaintiffs, she has an interest in her speech and protest rights that she alleges Defendants infringe. Defendants point out that Campbell fails to show how her interest is related to Plaintiffs' suit. The court agrees. Although Campbell has stated an interest that parallels the interest Plaintiffs seek to protect, she has not shown that the interests are related.

Unlike permissive intervention, the standard for "relatedness" for intervention as of right requires more than common questions of law or fact. Campbell must show that she "will suffer a practical impairment of [her] interests as a result of the pending litigation."[68] Campbell fails to show how the interests are related beyond superficial similarity. Plaintiffs' lack of standing to bring a cause of action for Campbell's injuries highlights that fact. If Plaintiffs lose their case, Campbell is not precluded from bringing her cause of action. Plaintiffs' failure on their injunction claim does not preclude Campbell from seeking that relief in a separate action. Campbell points to

---

[66] *Chinatown Neighborhood Ass'n v. Brown*, Case No. 12-3759 PJH, 2012 WL 4059896, at *1 (N.D. Cal. Sept. 14, 2012) (citing *United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1148 (9th Cir. 2010)).

[67] *Id.* (citing *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006)).

[68] *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006).

15
Case No.: 11-5539 PSG
ORDER

nothing more than the fact that she also might have a claim against Defendants – intervention as of right requires more.

Even if Campbell showed a related protectable interest, she fails to articulate how disposition of the suit could adversely affect her. If Plaintiffs succeed on their injunction claim, Campbell theoretically would also benefit from that protection, but if Plaintiffs fail, Campbell is not precluded from seeking relief herself. As to the claims on which Plaintiffs are collaterally estopped,[69] Campbell is either likewise collaterally estopped or she is not, but that determination is not impacted by the underlying litigation. Campbell, therefore, has not shown that she would be significantly impaired if she could not intervene.

Because Campbell has not shown two of the four required elements for intervention as of right, the court denies her motion to intervene on those grounds.

### 2. Permissive Intervention

The standard for permissive intervention is lower: the party must show only a "question of law or fact in common" with the action in which they seek to intervene, that the request is timely, and that the court has "an independent basis for jurisdiction" over the claims.[70] If the party meets the threshold requirements, the court has considerable discretion to permit or to deny intervention.[71]

Defendants argue Campbell's motion is untimely because she filed it after Defendants filed their first motion to dismiss and because she knew about the facts giving rise to her claims long before she filed her motion. To determine timeliness, the court considers three factors: (1) "the stage of the proceedings at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of delay."[72]

---

[69] *See* Docket No. 43.

[70] *See id.*; Fed. R. Civ. P. 24(b).

[71] *See In re Benny*, 791 F.2d 712, 721-22 (9th Cir. 1986); *Center for Biological Diversity v. U.S. EPA*, Case No. C-11-06059, 2012 WL 909831, at *6 (N.D. Cal. Mar. 16, 2012).

[72] *County of Orange v. Air Cal.*, 799 F.2d 535, 537 (9th Cir. 1986).

16
Case No.: 11-5539 PSG
ORDER

Here, the proceedings are still in the pleading stage, even though the trial date is set for February 19, 2013. Although the impending trial date appears to weigh against intervention, Campbell in fact moved the court for intervention at the end of May, well before the close of fact discovery or the trial date. The prejudice to Defendants from Campbell's late entrance to the case is minimal in light of the similarity of the claims that she raises, as noted in greater detail below.

But Campbell provides no reason for her delay other than references to Plaintiffs' inability to adequately represent her claims. Her delay of nine months is substantial, and Campbell arguably should have had notice much earlier that Plaintiffs had filed an action in which she might want to join, especially in light of her membership in the same small organization of which Plaintiffs are members.[73] On the other hand, Campbell may not have realized Plaintiffs did not have standing to address her claims until Defendants filed their first motion to dismiss. Although a close call, the court finds for the purposes of the threshold requirements for permissive intervention, Campbell's motion was timely.

Campbell's claims arise out of many of the same confrontations giving rise to Plaintiffs' suit. Like Plaintiffs, Campbell protested Defendants' treatment of the circus animals and attempted to document the treatment through use of a video camera. And like Plaintiffs, she alleges that at these protests Defendants harassed her and interfered with her exercise of her speech and protest rights. Indeed, Campbell and Plaintiffs are members of the same organization, Humanity through Education, and engaged in the same protests. Campbell's claims, therefore, present common questions of law and fact, such as whether Defendants' employees engaged in harassing behavior.

Campbell also meets the final prong because the court has independent jurisdiction over her claims. As in Plaintiffs' case, Campbell and Defendants are diverse, and based on her claims, the amount in controversy exceeds $75,000. The court may properly exercise diversity jurisdiction over Campbell's claims.

---

[73] *See Officers for Justice v. Civil Serv. Com'n of City and County of San Francisco*, 934 F.2d 1092, 1095 (9th Cir. 1991) (holding that for purposes of timeliness, the inquiry is when an intervening party should have become aware that their interests were not adequately protected rather than when they actually became aware).

17

Case No.: 11-5539 PSG
ORDER

Having established that Campbell meets the threshold requirements for permissive intervention, the court now turns to whether, in its discretion, it will permit her leave to intervene. Defendants argue that Campbell should not be allowed to intervene because her claims are so similar to Plaintiffs' claims that they are also subject to dismissal and are not actionable. Defendants misstate the result of the June 4 order dismissing many, but not all, of Plaintiffs' claims. The court found Plaintiffs alleged sufficient facts to support claims under California Civil Code Section 52.1 for Defendants' use of intimidating actions to threaten Plaintiffs speech in violation of Article 1, Section 2 of the California Constitution. Campbell alleges a similar violation in her complaint.

Nevertheless, the court finds that most of the claims in Campbell's proposed complaint would be subject to dismissal as described in the June 4 order. For example, she fails to plead severe emotional distress in her IIED claim, and her factual allegations, which bear striking similarity to Plaintiffs', fail to support her claims for violations of California Civil Code Sections 1708 and 3409. If the court allows Campbell to intervene, it must allow her the opportunity to fully litigate her claims.[74] To the extent that her complaint falls short, she would likely have a right to at least one amendment if not more, which would delay further setting the viable claims to be litigated. The court is allowing Plaintiffs one final opportunity to set their pleadings. Allowing Campbell to intervene when her proposed complaint is already problematic would reset the proceedings back three motions. Plaintiffs would have to wait until Campbell's claims could be sorted and Defendants would need to present repetitive motions to dismiss.

In light of the disruption Campbell's intervention is likely to cause in the progression of this case, and because the timeliness of her motion is questionable, the court will not permit Campbell to intervene in this case. Her motion for permissive intervention is DENIED.

### IV.   CONCLUSION

Plaintiffs' motion for leave to amend their complaint is GRANTED-IN-PART. Within seven days, they may file a TAC in accordance with the court's instructions. Defendants' motion

---

[74] *See League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997).

18
Case No.: 11-5539 PSG
ORDER

to dismiss accordingly is DENIED as moot.  Campbell's motion to intervene on either permissive grounds or as a matter of right is also DENIED.

**IT IS SO ORDERED.**

Dated:  November 15, 2012

                PAUL S. GREWAL
                United States Magistrate Judge

19

Case No.: 11-5539 PSG
ORDER